UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MINNESOTA LIFE INSURANCE COMPANY, </br></br> Plaintiff, </br></br> v. </br></br> SARAH LENOX, SAMANTHA LENOX, PAUL BURKS, JASON BURKS, RICHARD THOMAS, and SCHRADER FUNERAL HOME, INC. </br></br> Defendants. | Case No. 4:24-cv-00764-SRC |

## Memorandum and Order

Ronald Lenox died in the summer of 2022, entitling his ex-wife, Julie Thomas, to recover more than $16,000 from Minnesota Life. To pay for Ronald's funeral, Thomas assigned her interest in the policy to Schrader Funeral Home. But Thomas died before Minnesota Life paid out the proceeds. Caught holding the bag, and facing competing claims, Minnesota Life filed a complaint in interpleader against Thomas's heirs and Schrader. Schrader answered and filed a cross-claim for the unpaid amount of the funeral expenses. Thomas's heirs didn't file anything. Schrader moves for default judgment on its cross-claim. Because interpleader is proper, and because Schrader has alleged a cause of action and proven damages, the Court grants Schrader's motion.

I. **Background**

  A. **Factual background**

The Court accepts the following well-pleaded facts as true for purposes of this motion for default judgment. Ronald[1] had a life insurance policy through his employer. Doc. 11 at 5, ¶ 1.[2] Minnesota Life provided the coverage. *Id.* The policy provides that Ronald's ex-wife, Thomas, may recover the insurance proceeds upon Ronald's death. *Id.* at 5, ¶ 3. Ronald died on July 14, 2022. *Id.* at 5, ¶ 2. The same day, his next of kin, Samantha Lenox, authorized Schrader to provide funeral services, which Schrader did. *Id.* at 5, ¶ 4; *id.* at 6, ¶ 9.

Thomas entered an agreement to pay Schrader the balance due under the funeral-services agreement: $8,294.55. *Id.* at 5, ¶ 5. To make the payment, Thomas executed an assignment allowing Schrader to recover the proceeds of the policy up to the balance due. *Id.* at 6, ¶ 6. But before Schrader could recover what Thomas owed it, Thomas died. *Id.* at 6, ¶¶ 7–8. Two years have passed. *Id.* at 6, ¶ 8. No one opened up a probate estate with respect to Thomas's estate, and Schrader has not yet received any of the policy's proceeds, or any other payment for its services. *Id.* at 6, ¶¶ 7–8.

  B. **Procedural history**

On May 31, 2024, Minnesota Life filed an interpleader complaint. Doc. 1. It alleged that, at Ronald's death, the Policy's proceeds totaled $16,098.80. *Id.* at ¶ 15. Minnesota Life concedes that it has no interest in the proceeds and that it merely seeks to deliver the proceeds to whoever is entitled to them. *Id.* at ¶¶ 29–30. Minnesota Life filed the complaint against

---

[1] Where the Court uses first names, it does so for the sake of clarity, not to imply familiarity.

[2] The Court cites to page numbers as assigned by CM/ECF.

2

Thomas's heirs and Schrader.  *See id.*; *id.* at ¶ 25.  Minnesota Life alleges that one of Thomas's children, Sarah Lenox, made a claim against it for 100% of the Policy proceeds.  *Id.* at ¶ 26.

Minnesota Life served all Defendants between June 7 and August 15, 2024.  *See* docs. 5–9, 32.  Based on the dates of service, Defendants' answers were due between June 28 and September 5, 2024.  *See id.*  Schrader timely filed its answer, along with a cross-complaint against all other Defendants for the amount due under the funeral-services agreement.  *See* doc. 11.  No other Defendant filed a response.  Schrader served Cross-Defendants with its cross-complaint between July 27 and August 14, 2024.  *See* docs. 25–26, 28–29, 31.  Based on the dates of service, Cross-Defendants' answers were due between August 19 and September 4, 2024.  *See id.*  No Cross-Defendant filed a response.

Schrader filed a Motion for Entry of Clerk's Default against Cross-Defendants on September 17, 2024.  Doc. 38.  The Clerk of Court entered default against Cross-Defendants a month later.  Doc. 42.  The next day, Schrader filed a Motion for Default Judgment.  Doc. 43.

To its Motion for Default Judgment, Schrader appends the affidavit of its president, Steven Schrader.  Doc. 43-1.  In it, Mr. Schrader confirms that Schrader has not received the $8,294.55 balance and that the funeral-services agreement entitles Schrader to recover interest of 0.83% per month.  *Id.* at 2, ¶¶ 10–11.  The affidavit includes two attachments.  First, Mr. Schrader attaches the assignment.  *Id.* at 4.  It says, in relevant part:

> FOR VALUE RECEIVED, I hereby assign to . . . Schrader . . . all my right, title[,] and interest in and to Policy No _____ issued by _____ upon the life of Ronald Orval Lenox . . . giving to the said funeral director full and complete authority to collect the proceeds of said insurance policy and to apply the said proceeds first to the payment of the funeral bill of the said funeral director in the sum of $8,294.55 dollars for the death of said deceased, the balance, if any, of such proceeds to be paid to me.

3

*Id.*  The notarized assignment omits the policy number and the name of the insurance company.  *See id.*  Second, Mr. Schrader attaches an itemized statement for the services that Schrader rendered.  *Id.* at 5.  The statement, addressed to Thomas, shows a total balance due of $8,294.55.  *Id.*  It also says:  "The Total Amount is payable in full on or before 10/24/2022.  A late charge of 10.00% per annum for unanticipated late payment will be charged effective 10/25/2022."  *Id.* (emphasis omitted).

## II.     Standard

The law disfavors default judgments, and before entering one, a court should satisfy itself that the moving party is entitled to judgment by reviewing the sufficiency of the complaint and the substantive merits of the plaintiff's claim.  *United States ex rel. Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir.1993); *Monsanto Co. v. Hargrove*, No. 4:09-cv-01628-CEJ 2011 WL 5330674, at *1 (E.D. Mo. Nov. 7, 2011).  To obtain a default judgment under Federal Rule of Civil Procedure 55(b), a party must follow a two-step process.  First, the party must obtain an entry of default from the Clerk of Court.  *See* Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Once the Clerk enters default, the defendant is deemed to have admitted all well-pleaded factual allegations in the complaint.  *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

Second, the party must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).  "[T]he entry of a default judgment . . . [is] committed to the sound discretion of the

4

district court." *Harre*, 983 F.2d at 130 (citing *FTC v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977) (per curiam)); *see also Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (reviewing the entry of default judgment for abuse of discretion) (citations omitted).  While all well-pleaded facts are deemed admitted upon default, "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998)).

A party entitled to default judgment must sufficiently prove its damages.  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818–19 (8th Cir. 2001).  A court may not enter default judgment until it ascertains the amount of damages.  *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993)).  "The court may conduct hearings or make referrals . . . when it needs to:  (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

## III. Discussion

Typically, interpleader actions progress through two stages.  At the first stage, the Court must determine whether the fundholder has a "right to compel claimants to litigate their numerous claims in one proceeding and to confine total recovery to [an] amount not exceeding the deposited fund."  *Great Am. Ins. Co. v. Bank of Bellevue*, 366 F.2d 289, 293 (8th Cir. 1966) (citation omitted).  If the fundholder has such a right, the Court proceeds to the second stage, where the Court "determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial."  *U.S. v.*

*High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007); *see DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816–17 (8th Cir. 2024) (citing *High Tech Products* approvingly). As discussed below, the record supports, and no party contests, the propriety of interpleader. And because Schrader has filed a meritorious default-judgment motion, the Court advances to the second stage and grants Schrader's motion.

### A. Minnesota Life has demonstrated a right to interpleader.

At the first stage, the Court must determine whether the case at bar satisfies the "prerequisites to . . . statutory interpleader." 7 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1714 (3d ed. 2024); *see also, e.g.*, *Great Am. Ins. Co.*, 366 F.2d at 293 (citing Wright's treatise in the context of interpleader procedure); *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1307 (8th Cir. 1977) (same); *Primerica Life Ins. Co. v. Woodall*, 975 F.3d 697, 699 (8th Cir. 2020) (same). Eighth Circuit precedent requires the Court to construe and apply the interpleader statute "liberally" so that parties may obtain relief from "the hazards and vexations of conflicting claims." *Douglas-Guardian Warehouse Corp. v. Ramy Seed Co.*, 271 F.2d 24, 28 (8th Cir. 1959). Under this liberal standard, Minnesota Life has demonstrated a right to interpleader.

The federal interpleader statute gives the district courts original jurisdiction over statutory-interpleader claims. *See* 28 U.S.C. § 1335. To fall within the ambit of that jurisdiction, a case dealing with insurance proceeds must satisfy the following three requirements. First, the plaintiff must have issued a "policy of insurance . . . of value or amount of $500 or more." 28 U.S.C. § 1335(a). Second, at least two "adverse claimants" of diverse citizenship must exist. 28 U.S.C. § 1335(a)(1). And third, the plaintiff must have deposited the proceeds into the court's registry. 28 U.S.C. § 1335(a)(2).

1.      **The case satisfies the $500 amount-in-controversy requirement.**

Minnesota Life has demonstrated that the disputed insurance proceeds exceed $500. It not only pleaded this with specificity in its complaint, *see, e.g.*, doc. 1 at ¶¶ 8, 15, but it also deposited $17,621.39 into the Court's registry, *see* doc. 45, after the Court ordered it to deposit the policy proceeds into the Court's registry, doc. 44 at 2. That leaves no doubt that the case satisfies the $500 amount-in-controversy requirement. *See* 7 Wright & Miller, *supra*, § 1710 (explaining that "the obligation to deposit the stake . . . provides a ready measure for determining what is in dispute and its value").

2.      **Multiple adverse claimants of diverse citizenship exist.**

Claims are "adverse" if they subject the plaintiff to a "risk of double payment of a single liability." *Dakota Livestock Co.*, 552 F.2d at 1306–07 (quoting *Hebel v. Ebersole*, 543 F.2d 14, 17 (7th Cir. 1976)). Adverse claims include not just "claims that have actually been made when suit is filed" but also "potential claims." *Id.* at 1308. Whether a claim is adverse "depend[s] [not] upon the merits of the claims of the defendants" but upon the "good faith" of the plaintiff that seeks to "maintain a suit in interpleader for the purpose of ridding himself of the vexation and expense of resisting adverse claims." *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 556 (8th Cir. 1940).

The interpleader statute requires that the adverse claimants satisfy "minimal diversity." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). Thus, as long as two or more adverse claimants hail from different states, the fact that some adverse claimants hail from the same state does not destroy diversity. *Id.*

Here, Minnesota Life alleges—and provides evidence—that Sarah made a claim for 100% of the policy proceeds. *See* doc. 1 at ¶ 26; doc. 1-6. And it alleges that another of

7

Thomas's children (and therefore another potential adverse claimant), Samantha, is a citizen of Illinois.  *See* doc. 1 at ¶¶ 3, 25.  Schrader, which filed a counterclaim for a portion of the policy proceeds, *see* doc. 11, is a citizen of Missouri, *see* doc. 1 at ¶ 7; doc. 11 at ¶ 7.  These three claims are "adverse" because Minnesota Life could not pay the full amount of Sarah's claim (for 100% of the Policy proceeds) *and* Schrader's claim (for more than $8,000) *and* Samantha's potential claim (for an indeterminate amount) without accepting responsibility beyond the "single liability" of the policy's obligation.  *Dakota Livestock Co.*, 552 F.2d at 1306–07 (quoting *Hebel*, 543 F.2d at 17).  And although Samantha "has not as yet asserted any liability on the part of [Minnesota Life], [she] has not admitted that no such liability exists" even though she was served with both the complaint and the cross-complaint.  *Dakota Livestock Co.*, 552 F.2d at 1308; *see* docs. 6, 28.  Thus, she qualifies as an adverse claimant.  *See Dakota Livestock Co.*, 552 F.2d at 1308.

These adverse claimants satisfy the diversity requirement, too.  Because Samantha hails from Illinois, while Schrader, Sarah, and the other claimants hail from Missouri, the interpleader statute's diversity requirement does not preclude the Court from exerting jurisdiction.  *See State Farm*, 386 U.S. at 530.

### 3. Minnesota Life deposited the policy proceeds into the registry.

On November 6, 2024, Minnesota Life deposited $17,621.39 into the Court's registry.  *See* doc. 45.  Thus, the case satisfies all jurisdictional requirements for statutory interpleader.  *See* 28 U.S.C. § 1335.  The Court finds no evidence that it would be improper or inequitable to allow interpleader, so the Court proceeds to the second stage.

### B. Schrader has filed a meritorious default-judgment motion.

### 1. Schrader has stated a cause of action.

The Court begins by considering whether the unchallenged facts in Schrader's cross-complaint constitute a legitimate cause of action. The Court concludes that Schrader has adequately alleged that it received a valid and enforceable assignment of the policy proceeds.

### a. The assignment is valid.

"[I]nsurance policies are contracts." *Opioid Master Disbursement Tr. II v. ACE Am. Ins.*, 688 S.W.3d 690, 696 (Mo. Ct. App. 2024), *transfer denied* (Apr. 9, 2024), *transfer denied* (June 4, 2024). A party to a contract validly assigns the benefits of a contract if it "appears from the circumstances an intention on the one side to assign [presently] and on the other side to receive." *Barker v. Danner*, 903 S.W.2d 950, 956 (Mo. Ct. App. 1995) (quoting *Farmers Ins. Co. v. Effertz*, 795 S.W.2d 424, 425 (Mo. Ct. App. 1990)). Axiomatically, an assignor can't give what he doesn't have. *See Citibank v. Mincks*, 135 S.W.3d 545, 556 (Mo. Ct. App. 2004) (holding that "Missouri law is well-settled that an assignee acquires no greater rights than the assignor had at the time of the assignment" (quoting *Carlund Corp. v. Crown Ctr. Redevelopment*, 849 S.W.2d 647, 650 (Mo. Ct. App. 1993)). To determine whether a valid assignment exists, the Court must consider "all the circumstances of the transaction" and not merely the "form of words used in making the agreement." *Miller v. Heisler*, 187 S.W.2d 485, 488 (Mo. Ct. App. 1945).

Here, Schrader adequately alleges validity. Schrader alleges that Thomas agreed to pay Schrader for funeral services by assigning her rights to the policy proceeds up to the balance owed. Doc. 11 at 5, ¶ 5. In other words, Thomas, at the time she entered the funeral-services agreement, had a present intention to assign her interest in the policy to Schrader. *See Barker*,

9

903 S.W.2d at 956.  And Schrader, by entering the funeral-services agreement, manifested its intention to receive the assignment.  *See id.*  Finally, Schrader, by alleging that Thomas was the primary beneficiary under the policy and that she transferred her interest before she died, *see* doc. 11 at 5, ¶¶ 2–3, *id.* at 6, ¶¶ 6–8, alleges that Thomas had possessed the right that she purportedly assigned, *see Citibank*, 135 S.W.3d at 556.

The language of the assignment confirms the alleged intentions of the parties.  Sure, the purported assignment omits the policy number and the insurance company's name.  *See* doc. 1-5 at 2.  But it includes enough other information to clarify the terms and the intentions of the parties.  The notarized assignment specifies the name of the insured, the insured's date of birth and Social Security number, the name of the assignee, and the name and signature of the assignor.  *See id.*  And, no party points to any other insurance policy that Thomas could have intended to assign.  What's more, the assignment gives Schrader the "full and complete authority to collect the proceeds" up to the specified amount.  *See id.*  Considering "all the circumstances of the transaction," the Court concludes that Thomas validly assigned her interest in the proceeds at issue to Schrader.  *Miller*, 187 S.W.2d at 488.

          **b.**      **The assignment is enforceable.**

Schrader alleges that the assignment constituted Thomas's payment for services under a valid contract.  In Missouri, "[t]he three essential elements of a valid contract are offer, acceptance, and bargained[-]for consideration."  *Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 752 (Mo. banc 2022) (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014)).  Here, Schrader has alleged all three.

First, Schrader alleges that Thomas "agreed to pay the balance due" under the funeral-services agreement.  Doc. 11 at 5, ¶ 5.  And Schrader alleges that Schrader performed all

10

the services that it had agreed to perform. *Id.* at 6, ¶ 9. Thus, Schrader has alleged offer and acceptance. And the funeral-services agreement contains consideration. Schrader alleges that Thomas agreed to "transfer" her interest in the policy and that Schrader "promise[d]" to provide funeral services. *See id.*; doc. 11 at 5, ¶ 5; *id.* at 6, ¶ 6.

Because Schrader has alleged that the assignment provided consideration for a valid contract, Schrader can enforce the assignment. *See Bridgecrest*, 648 S.W.3d at 757 (holding that a contract was "enforceable" after determining that the elements of a valid contract existed). Accordingly, Schrader has adequately alleged a cause of action.

### 2.     Schrader adequately proved damages.

Schrader asks the Court for two things: (1) the $8,294.55 principal balance under the funeral-services agreement, and (2) late charges of $2.27 per day for every day since October 24, 2022. Schrader has proven that it may recover the principal, but it has not proven that it may recover the interest.

Because the Court agrees that the assignment is valid and enforceable, *see supra* Section III.B.1, Schrader may recover the full amount that the assignment authorizes it to recover. *Cf. Birdsong v. Bydalek*, 953 S.W.2d 103, 116 (Mo. Ct. App. 1997) (holding that a breach-of-contract plaintiff "may recover the benefit of his or her bargain as well as damages naturally and proximately caused by the breach and damages that could have been reasonably contemplated by the defendant at the time of the agreement"). To determine the amount that Schrader may recover, the Court attempts to "ascertain the intention of the parties and to give effect to that intent." *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995). In so doing, the Court must read the contract "as a whole." *Koehler v. Rowland*, 275 Mo. 573, 583 (1918). The Court must "give each provision a reasonable meaning and avoid an interpretation that renders

11

some provisions useless or redundant." *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W. 3d 530, 534 (Mo. Ct. App. 2000) (citing *AJM Packaging Corp. v. Crossland Constr. Co., Inc.*, 962 S.W.2d 906, 912 (Mo. Ct. App. 1998)).

Here, the evidence before the Court proves that Schrader may recover the principal balance of $8,294.55. *See* doc. 43-1 at 5. The assignment specifies that Thomas transferred to Schrader her right "to collect the proceeds of [the Policy] and to apply the . . . proceeds . . . to the payment of the funeral bill . . . in the sum of $8,294.55." *Id.* at 4. Plainly, the language authorizes Schrader to recover the $8,294.55 principal amount due on the statement. *See id.* at 4–5.

But Schrader has not proven that it may recover the late charge of 10.00% per year for "unanticipated late payment." *Id.* at 5. For starters, under a plain reading of the assignment, Thomas agreed to assign the policy proceeds to Schrader only up to the sum-certain $8,294.55 principal. *See* doc. 43-1 at 4 (authorizing Schrader to collect the policy proceeds up to "the payment of the funeral bill of [Schrader] in the sum of $8,294.55"); *see also Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (holding that a court should read a contract as a whole and give terms "their plain, ordinary, and usual meaning"). The enumeration of a specific amount—without any specification that Schrader would be allowed to recover other amounts—supports this interpretation. *See Gen. Am. Life Ins. Co. v. Barrett*, 847 S.W.2d 125, 133 (Mo. Ct. App. 1993) (holding that the maxim *expression unius est exclusion alterius* applies to the construction of contracts). And construing the assignment as allowing Schrader to recover more than the enumerated principal amount would render "useless" the part of the assignment that specifies the principal. *See Wildflower*, 25 S.W. 3d at 534. It would also fail to read the contract "as a whole." *See Koehler*, 275 Mo. at 583.

12

But although Schrader may not recover the liquidated late fees, it may recover pre-judgment interest.  "State law governs whether a diversity litigant may recover pre-judgment interest."  *Cont'l Indem. Co. v. IPFS of N.Y., LLC*, 7 F.4th 713, 719 n.7 (8th Cir. 2021) (quoting *Lincoln Benefit Life Co. v. Edwards*, 243 F.3d 457, 462 (8th Cir. 2001) (per curiam)).  In Missouri, a contract creditor may obtain pre-judgment interest of nine percent per annum after payment becomes due and the creditor demands payment.  Mo. Rev. Stat. § 408.020.  For a contract creditor to obtain pre-judgment interest, three conditions must exist:  "(1) the expenses must be due; (2) the claim must be liquidated or the amount of the claim reasonably ascertainable; and (3) the obligee must make a demand on the obligor for the amount due."  *Karr v. Kansas City Life Ins. Co.*, 702 S.W.3d 1, 45 (Mo. Ct. App. 2024).  Here, the Court's analysis above demonstrates that the first two conditions exist.  And as for the third condition, Schrader has submitted evidence that it demanded payment from Thomas on October 7, 2022.  Doc. 43-1 at 5.  Thus, the Court awards Schrader pre-judgment interest of nine percent per annum, from October 7, 2022, until November 6, 2024—the day that Minnesota Life deposited the policy proceeds into the Court's registry.  *See id.*; Mo. Rev. Stat. § 408.020; *see also Moore v. Prindable*, 815 S.W.2d 25, 28 (Mo. Ct. App. 1991) (holding that "interest should never be awarded for a time a fund is on deposit in the registry of the court").  Thus, the Court awards Schrader pre-judgment interest of $1,554.37, which is calculated as follows:  [($8,294.55) * (9% interest) * (2 years between October 7, 2022 and October 7, 2024)] + {($8,294.55) * (9% interest) * [(30 days between October 7, 2024, and November 6, 2024)/ (365 days in a year)]} = $1,554.37.  And so coupled with the principal, Schrader may recover $9,848.92, or 55.892% of the deposited funds.  *See* doc. 45.

13

On top of that, because Schrader is entitled to receive 55.892% of the deposited policy proceeds, it is also entitled to receive 55.892% of the interest that has accrued on the proceeds since Minnesota Life deposited the policy proceeds into the Court's registry. *See Webb's Fabulous Pharms. Inc. v. Beckwith*, 449 U.S. 155, 163 (1980) (holding that "any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal").

Because Schrader has not received any payment for its services, *see* doc. 43-1 at ¶ 10, the Court declines to reduce the award.

## IV.   Conclusion

Accordingly, the Court grants Schrader's [43] Motion for Default Judgment.  The Court awards Schrader $9,848.92 plus 55.892% of the interest that has accrued since Minnesota Life deposited the policy proceeds into the Court's registry.  Pursuant to Eastern District of Missouri Local Rule 13.04(C)(3), the Court orders Schrader to file, no later than February 13, 2025, a proposed order for disbursement of the funds in the Court's registry.  A separate judgment accompanies this Memorandum and Order.

So ordered this 30th day of January 2025.

*SLR.CR*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE